SELIGMAN *et al.,* trustees, *vs.* SAUSSY *et al.*

EASTERLING & HUBBELL *et al. vs.* SAUSSY *et al.*

60   20
Case 2
115  634

1. Where a case was submitted to the court without the intervention of a jury, and the bill of exceptions to his decision contains the evidence before him, and is certified to be true, the evidence is thereby approved.

2. Where an order has been granted that a fund in the hands of a re-

ceiver should be surrendered to trustees in bankruptcy, except so much as is legally necessary to defray the costs and expenses of collecting the fund, and of securing it until the granting of the order of surrender; before a claim can be paid out of the fund, it is necessary to show specifically that it comes within the exceptions stated.

3. Under the exceptions stated in the order fall the expenses of filing the bill and collecting the assets by the receiver, including counsel fees from the filing of the bill up to the time the assets were demanded on the petition of the trustees, and the cost of services of the receiver, and his counsel, to the time that the fund was ordered to be surrendered.

4. Nothing should be allowed for counsel fees or costs of suing out attachments which originated within one month before the bankruptcy, and which, being dissolved by operation of law, were never carried to judgment.

5. Nor should any costs or fees be allowed which were incurred in resisting the trustees after they had filed their petition.

Jackson, Judge, dissented.

Practice in the Supreme Court. Practice in the Superior Court. Bankrupt. Attorney and client. Lien. Before Judge TOMPKINS. Chatham Superior Court. October Term, 1877.

Reported in the decision.

C. N. WEST; A. T. AKERMAN; H. C. CUNNINGHAM, for plaintiffs in error.

J. R. SAUSSY ; HOWELL & DENMARK ; HARTRIDGE & CHISHOLM; W. U. GARRARD ; GEORGE A. MERCER, for defendants.

WARNER, Chief Justice.

A bill was filed in the superior court of Chatham county by Moses Ferst and others, as creditors of Samuel Kaufman, Henry Mayer and Charles H. Kaufman, against George Von Seybold and others. The bill was what is generally known as a creditors' bill, and was filed on the 12th day of October, 1874. No subpœna and no relief were prayed

against the said Kaufmans and Mayer, whose property was sought to be distributed under the bill, and which property came into the custody of said court. On the 21st day of October, 1874, a petition in bankruptcy was filed in the district court of the United States for the southern district of New York, by creditors, against the said Kaufmans and Mayer, and on the 31st day of October, 1874, the said Kaufmans and Mayer were, in the said last mentioned court, duly adjudged bankrupts. On the 25th day of March, 1875, the said complainants amended their said bill so as to make the said Kaufmans and Mayer parties defendant thereto.

On the 5th day of April, 1875, Joseph Seligman, Lawrence Wells, and Edward Morgan, trustees in bankruptcy of the said bankrupts, having, on the 15th day of February, 1875, obtained an injunction from the district court of the United States for the southern district of Georgia, restraining the complainants in said bill from proceeding therein, filed a petition to obtain possession of the assets of said bankrupts, which petition was finally granted by the said superior court at the November term, 1876, the order therefor having been dictated by this court, which provided that the necessary costs and expenses for securing and collecting said fund, should be first paid before the said fund should be turned over. Before the said fund was finally ordered to be paid to said trustees, petitions were filed by various parties to have paid to them sundry sums of money, for various services alleged to have been rendered by them in said cause ; and the nature of said services were alleged to be as follows :

J. R. Saussy claimed compensation for his services as solicitor for the complainants in the bill.

Howell & Denmark claimed as assistant counsel for the complainants ; and also by virtue of an alleged lien as counsel for attaching creditors, upon a part of the fund in the custody of said court.

George Von Seybold claimed as receiver in said cause,

and Hartridge & Chisholm and William U. Garrard as his counsel.

C. D. C. Rhind, as master in said cause.

Charles S. Hardee claimed a sum for costs due him, and due the late clerk, George P. Harrison, and the sheriff, John T. Ronan.

Philip M. Russell claimed for costs due upon attachment cases against said bankrupts in the city court of Savannah.

Sigmund Elsinger and Julius Kaufman jointly claimed for magistrate court costs against said bankrupts.

Rufus E. Lester and George A. Mercer separately claimed for counsel fees on sums, a part of said fund, alleged to have been attached by their clients.

No attachment upon which costs or fees were claimed, originated over one month before said bankruptcy, and none were due upon any attachment carried to judgment.

To these claims the said trustees in bankruptcy, and the said bankrupts, and Easterling & Hubbell, creditors defendant to said bill, filed various objections, which were in substance as follows—

To all of the claims they objected :

1. That by the bankrupt laws of the United States the trustees were entitled to have the fund in its integrity, and without any diminution by payment to the claimants.

2. That the state court had no such jurisdiction of the said fund as would authorize it to grant payment to the claimants.

3. That the claimants severally had performed no services for which they were entitled to the amounts they claimed, or any part of them.

4. That the claimants were not entitled to be paid anything in a court of equity, until a final decree should be had in that court in favor of the complainants against the defendants.

In addition to these general objections, they specially objected as to the claims of all parties except the receiver, master, sheriff and clerk, that their services were not such as entitled them in equity to receive payment out of said fund ;

and as to counsel for attaching creditors, and the said J. R. Saussy and Howell & Denmark, that they were entitled to be paid by their clients out of their dividend in the final distribution, and not out of said fund.

The court overruled these objections of the said objectors, and ordered that the receiver should pay to

| | |
|---|---:|
| J. R. Saussy | $ 2,000.00 |
| Howell & Denmark | 1,000.00 |
| | 560.00 |
| Rufus E. Lester | 256.55 |
| Hartridge & Chisholm, and William U. Garrard | 2,500.00 |
| C. D. C. Rhind | 200.00 |
| Charles S. Hardee, George P. Harrison, John T. Ronan | 677.35 |
| Phillip M. Russell | 127.50 |
| George Von Seybold, 5 per cent. upon fund, say | 2,500.00 |
| | 1,146.63 |
| Elsinger & Kaufman | 64.15 |
| George A. Mercer | 151.99 |
| | $11,184.17 |

The assets reported to the court by the receiver were some fifty thousand dollars.

To this decree in favor of said complainants the said trustees filed a bill of exceptions, alleging that the court erred upon the grounds named in their objections; the said Easterling & Hubbell, and the said Kaufmans and Mayer filed a bill of exceptions, similar in all respects, and the cause was sent to this court upon one record for both bills, under an agreement to that effect between plaintiffs and defendants in error.

1. When this case was called for a hearing in this court, the defendants in error made a motion to dismiss it, on the ground that the evidence in the case had not been approved by the court. The case was submitted to the court for trial without the intervention of a jury, and the evidence had before the court is set out in the bill of exceptions, which the presiding judge certified, when taken in connection with the record, was true. The evidence, there-

fore, as set out in the bill of exceptions, was approved by the judge.

2. 3. When the case was before this court on a former occasion, the fund in the hands of the receiver was directed to be surrendered to the trustees in bankruptcy, except so much thereof as is legally necessary to defray the costs and expenses of collecting the fund, and of securing it until the order of surrender shall be granted. See *Seligman et al. vs. Ferst & Co. et al.*, 57 *Ga. Rep.*, 561. We adhere to and reaffirm the judgment rendered in that case. It appears from the bill of exceptions that Von Seybold testified that his services as receiver were worth the sum claimed by him, that Mr. Saussy testified his services as counsel were worth the amount claimed by him, that Denmark testified that the services of Howell and Denmark as counsel were worth the sum of $1,000.00, that Garrard testified that the services of himself and Messrs. Hartridge & Chisholm as counsel for the receiver, were worth the amount claimed by them, that Carr testified that the services performed by Rhind were worth about $100.00 per month, without stating what services he did perform, and that is all the evidence as to the services claimed and rendered, as appears from the bill of exceptions, upon which the judgment of the court for the $11,184.17 was founded. What were the legal and necessary costs and expenses of collecting the fund, and securing it until surrendered to the trustees? In our judgment it includes the proper and necessary expenses in filing the bill and collecting the assets by the receiver, including counsel fees-from the time of the filing of the bill up to the time the assets were demanded, on their petition, by the trustees in bankruptcy, and including the services of the receiver and his counsel up to the time of ordering the surrender of the fund.

4. 5. But nothing should be allowed out of said fund for counsel fees, or costs, in suing out the attachments in the record mentioned, as said attachments did not and could not have contributed anything towards the collection of the

fund in the hands of the receiver, the same having been dissolved by operation of law, and nothing should be allowed for counsel fees or costs incurred in resisting the trustees after the trustees filed their petition. Inasmuch as the evidence in the bill of exceptions does not show for what the services claimed were rendered, whether in suing out the attachments or in filing the bill, or both, or in aiding the receiver in collecting the assets, we reverse the judgment and order a new trial, so that it may be made clearly to appear, by the evidence, for what the services claimed were rendered, and what those services were worth. In other words, what did the parties claiming compensation out of said fund do in collecting and securing it under said bill, and what were the services performed by them worth, which were properly chargeable upon said fund?

Let the judgment of the court below be reversed.

BLECKLEY, Judge, concurred, but furnished no written opinion.

JACKSON, Judge, dissenting.

I dissent from the judgment rendered by this court reversing the superior court of the eastern circuit, first, because it reaffirms the judgment rendered in this case when here before (57 *Ga.*, 561), by which reaffirmance I understand this court to mean, that if the case were again before us *de novo*, the same judgment ought to be rendered. I hesitated long and doubted much about the correctness of sending this fund, secured by Georgia courts and held in her chancery, to New York, to be distributed by the bankrupt court there; and if I had it to do over again, I should dissent from the judgment which transmitted any of the fund to the courts of another jurisdiction for distribution. The Georgia court of chancery could have as well distributed it as any other court, and the trustees in bankruptcy, under its decree, could have received that to which they would have been entitled under the bankrupt laws of the United States,

after liens and prior claims, if any, recognized by those laws, had been preferred and paid. And such, I think, is the current of more recent decisions of the supreme court of the United States.

Secondly. I dissent because I think that the counsel fees in the attachment cases should be paid. Those attachments secured these funds, or large portions of them, by garnishments duly served before the bill in equity was filed or framed. But for the process of attachment, the trustees in bankruptcy, and all the creditors of the bankrupt, might have lost, and probably would have lost, if not all, at least much of the fund secured; and the judgment of this court, when the case was first here, required all such costs and charges to be paid before the Georgia chancellor parted with the fund. That was the redeeming feature of the first judgment in the view I then took of the case, and I am unwilling now to forego a jot or tittle of these expenses of securing the fund. The attachments, as well as the bill, helped to save it.

Thirdly. I dissent because, in respect to many of the charges allowed by the superior court as chancellor, the proof embodied in the bill of exceptions is ample to sustain the judgment, and some of these are the largest and most important which were passed upon, and they arose out of the equity proceeding, and not the attachments. I refer particularly to the charges of the receiver and his counsel, and of the solicitor who drafted and managed the bill. There is no good reason why the judgment, in respect to these claims, and others of like character, should not have been affirmed, if it were necessary to send other claims back for further proof.

Fourthly. I dissent because no point whatever is made in the bill of exceptions, that the amount allowed to any claimant is too large, but the question made, and the sole question made, when the exceptions are analyzed, is an attack on the former judgment of this court, in so far as it required any costs and fees to be paid before the fund left

the superior court of Georgia. Therefore, I presume, the court, regarding that question alone as excepted to, was not particular in requiring the entire evidence to be embodied in the bill of exceptions, and there was, doubtless, much evidence before him of the value of services rendered and their nature, not detailed in the bill of exceptions, as was asserted in argument before this court by the one side, and not denied by the other. The position in argument for plaintiffs in error was, that the counsel should be paid, not out of the general fund, but out of the share thereof awarded their respective clients, and that the New York bankrupt court would award them, or any of them, such fees from the general fund as any were entitled to for securing and preserving it. Indeed, it was an effort to re-open the judgment pronounced in this case on that question, whilst careful not to re-open it on the main question of the transfer of the fund to the bankrupt court. If re-opened at all, the whole judgment ought to have been reconsidered; if held final in part, it ought to be held final in *toto*.

Fifthly. I dissent because, whilst the judge of the superior court does certify to the bill of exceptions as true, he qualifies the certificate by referring, also, to the transcript of the record, as containing other and additional evidence, and on turning to the transcript I find no such evidence therein. It is the duty of the plaintiffs in error to bring before this court all the testimony had before the superior court, material to elucidate the exceptions, and to show by the judge's certificate that all is brought up. This certificate leaves that matter in great doubt, and if the bill of exceptions ought not to be dismissed on the ground that all the evidence is not before us, the judgment, at least, ought not to be reversed for want of evidence, when the whole evidence necessary to elucidate the point argued now, has not been incorporated in the bill of exceptions, and does not appear in the record in such manner as to be considered by this court. No motion for a new trial was made, and hence no evidence could be found in the transcript of the record, except the

pleadings in the case. No point or exception is made in the bill of exceptions upon the evidence, either its legality or sufficiency, and I cannot think it right to reverse a judgment on the ground of insufficiency of evidence, when no point was made thereon, and no ruling thereon excepted to, and no motion for a new trial made.

Sixthly. Whilst the fees and costs—being about twenty-five per cent. upon the fund, which the court allowed—may seem large, yet, when it is remembered that the case was for years in court, the litigation tangled and heavy, the labor of the receiver and counsel, and their expenses, great, the fund in danger, and all secured by the vigilance of the cred itors who attached first, and then were parties to a bill in chancery, to avoid a multiplicity of suits and to save costs, the apparent extravagance of the allowance by the chancellor vanishes. Had all the evidence before him been before us—andthe plaintiffs in error should have brought it here if they made any point thereon—all these matters of expense, it is presumed, would have appeared more fully here, as the presumption is that they appeared below, because no exception is taken to the amount allowed.

On the whole, in my judgment, no sufficient ground exists to send this case back, especially in its totality; the plaintiffs in error have brought it confusedly before this court, to say the least, and no judgment of a superior court should be reversed unless the error plainly appears.

Therefore I dissent from this reversal.